SOUTHWICK, J., for the Court:
¶ 1. Appellant, Bobby Max Russell, appeals from a judgment of the Jackson County Chancery Court awarding the appellee, Cynthia V. Russell, past-due medical expenses for their three children, unpaid alimony, and attorneys fees. Though we affirm most of the chancellor’s findings and conclusions, we reverse as to one past-due bill and also reverse for findings about attorneys fees.
*1063 FACTS
¶ 2. Bobby Max and Cynthia Russell were divorced on April 16, 1992. Ms. Russell was granted primary custody of their three children, and Mr. Russell was ordered to pay all medical expenses incurred by his former wife and the children. He was also ordered to pay $250 per month in alimony for five years. At the time of the divorce, Mr. Russell was employed by the Mississippi Air National Guard as a federal civil service employee. His medical coverage was provided by Blue Cross Blue Shield. In August of 1994, a judgment was entered directing Ms. Russell “to make use of [Mr. Russell’s] military health care benefits for the children when they are reasonably available.”
¶ 3. Mr. Russell’s status changed from civil service to active military in November of 1996. Consequently, his medical coverage changed as well. He and his dependents became entitled to receive free medical treatment at Keesler Air Force Base. Any necessary treatment for Mr. Russell and his dependents that could not be obtained at Keesler would be covered under health care insurance called Tri Care Prime. It is designed for members who live near active duty bases. Though the evidence was not detailed, there was testimony that in order to receive coverage under the Tri Care policy, medical attention had to be sought at Keesler first. If Keesler is unable to provide the necessary treatment, patient is referred to other physicians who are able to provide the needed care. If a covered member seeks medical attention from an outside physician without first attempting to be treated at Keesler, Tri Care’s coverage is significantly less.
¶ 4. On March 6, 1997, Ms. Russell filed a complaint seeking payment for past-due medical expenses and $150 in unpaid alimony. She also sought an award of attorney’s fees. Mr. Russell responded that she had incurred unnecessary medical expenses by failing to seek care through Keesler before visiting outside physicians. Following a hearing held November 10,1997, the chancellor awarded $1,998.13, which included $363.13 reimbursement for prescription medication, $1,185 due physicians directly, and $450 to reimburse Ms. Russell for previous payments to physicians. Ms. Russell was also awarded $150 in unpaid alimony and $1,000 in attorney’s fees.
¶5. It is this judgment from which Mr. Russell appeals.
DISCUSSION
¶ 6. A chancellor has substantial discretion in resolving factual issues such as these. If substantial evidence supports the decision, and absent legal error, we will affirm. Cummings v. Benderman, 681 So.2d 97, 100 (Miss.1996).

I. Medical expenses

¶ 7. Mr. Russell argues that the chancellor erred in ordering him to pay almost $2,000 in expenses for medical treatment for his three children. He argues that if Ms. Russell had complied with the August 18, 1994 judgment and attempted to procure treatment at Kees-ler Air Force Base before seeing outside doctors, the medical expenses would have been greatly reduced due to health care insurance payments.
¶ 8. Under the 1992 judgment of divorce, it is Mr. Russell’s obligation to continue paying the medical bills of the children. However, the party incurring the expenses, Ms. Russell, has an obligation of her own. When a divorce severs the family and grants custody to one parent and assesses financial obligations to the other, the custodial parent’s actions in incurring expenses “are always subject to challenge on grounds of unreasonableness .... ” Clements v. Young, 481 So.2d 263, 267 (Miss.1985). The challenge can include that the custodial parent unreasonably created greater expenses than were necessary. In fact, the chancellor in 1994 ordered Ms. Russell to “make use of [Mr. Russell’s] military health care benefits for the children when they are reasonably available.”
¶ 9. A stipulation was entered by the parties that an absent physician would testify if called that medical treatment by the doctors outside Keesler “was in the best interest of the medical care of these children.” The chancellor made a finding that it would be in the best interest of the children that they *1064 continue treatment with the same physicians to which they had grown accustomed. We find substantial evidence to support that finding.
¶ 10. Then the chancellor ordered Mr. Russell to continue paying “all medical expenses incurred and not covered by the Tri Care plan_” The chancellor did not address whether Ms. Russell was reasonably using those benefits, or instead creating unreasonably high expenses because of the manner of seeking treatment. Mr. Russell’s argument is that a referral from Keesler to see these physicians would make his costs appreciably less. Ms. Russell’s appellate brief argues that proof that “one [insurance] benefit may be less expensive to [Mr. Russell] than another is irrelevant and immaterial.” It may be unimportant to the custodial parent, but that does not mean that a reviewing court may ignore the reasonableness of the expenses.
¶ 11. The evidence on these issues is relatively sparse. Mr. Russell testified as to the issue of referrals, and there was no contrary evidence. Ms. Russell testified that two of the physicians that she was using were approved by Tri Care. All that Mr. Russell argues is that the children’s mother should first take the children to a Keesler medical facility and seek to have a referral to these doctors that the children are using off the military base. Whether referrals were likely to be made for treatments that apparently were available from Keesler doctors was not addressed. Ms. Russell’s attorney named a physician whom he wished to call who could testify as to military medical benefits, but that testimony never was offered. Besides direct costs, reasonableness of the expense of care includes whether the custodial parent’s living in a distant location makes it impractical to seek medical care that would be cheaper than the care being provided elsewhere. Ms. Russell suggested that it was inconvenient to take the children to Keesler, but one of the physicians that she is seeking payment for is in Biloxi, just as is Keesler.
¶ 12. Based on this record, we cannot find that the chancellor has permitted unreasonable expenses to be created. Therefore we make no adjustment to the chancellor’s order based on the failure of Ms. Russell to seek a referral. However, if in fact it is reasonably possible to acquire a referral from Keesler to the doctors that the children are seeing, and if that would meaningfully reduce the expense to Mr. Russell, then Ms. Russell must in the future take those steps. If such facts are proved at any subsequent proceedings, then it would be for the chancellor to determine whether Mr. Russell is responsible for any medical expense other than what he would have paid under a referral.
¶ 13. The stresses of divorce may well be inevitable. What a court should not approve, however, is a refusal to take reasonable steps to reduce overall expenses, steps here that might involve no greater travel or inconvenience than is already occurring.
¶ 14. The award of $363.13 to reimburse Ms. Russell for prescription medication expenses was proper as well. Coverage for medication under the Tri Care plan operates similarly to coverage for medical treatment. Ms. Russell must first visit the Keesler pharmacy. If it is unable to fill the prescription, she then must go to a participating pharmacy where she can obtain a thirty-day supply of medication for $5. According to Ms. Russell, she attempted to have several prescriptions filled at Keesler, but because of the nature of some of the medication, Keesler was unable to fill the prescription. She then attempted to have them filled for $5 at a participating pharmacy but was informed that her children were not entered in the system. As a result, for several months, she was unable to have her prescriptions filled under the Tri Care plan. Because she would be paying full price, she visited a non-participating pharmacy and incurred substantially more in pharmacy bills than if she had been able to use the Tri Care system.
¶ 15. No evidence was presented to contradict Ms. Russell’s testimony regarding her inability to use the Tri Care plan for several months. Moreover, it appears that the problem has since been corrected, as the receipts for medication reflect that she now uses the participating pharmacies. We affirm the chancellor’s award of reimbursement for prescription medication expenses.
*1065 ¶ 16. A portion of the award of medical expenses included $575 which was incurred prior to and immediately following the Rus-sells’ divorce. Mr. Russell alleges that this amount should have been sought earlier and the claim is barred. He cites two earlier judgments and one order which was entered, at least one of which resulted from a contempt proceeding concerning dental expenses. In none of these earlier proceedings was the $575 requested by Ms. Russell and thus, Mr. Russell claims that these previous judgments are res judicata as to that amount.
¶ 17. There is no explanation in the record as to why Ms. Russell failed to produce these medical bills in a timely fashion, instead of waiting four years to seek payment. The supreme court reduced an award of medical expenses that could have been addressed at an earlier contempt proceeding. Clements v. Young, 481 So.2d 263, 270 (Miss.1985). The court held that “[i]f there was a problem about medical or dental bills prior to [the earlier contempt proceeding], the matter could have and should have been litigated then. The decree ... is res judicata with respect to all claims that were presented or may reasonably have been presented at that time.” Id.
¶ 18. Ms. Russell could have presented the bill for $575 at an earlier proceeding rather than holding it for several years. She argues that res judicata is an affirmative defense and was never raised in pleadings. However, the complaint that sought this and other payments merely said that Mr. Russell had “refused to pay the medical expenses.” There was no itemization in the pleadings to which a defense of res judicata would have been proper. At the hearing when the bills were introduced, Mr. Russell’s attorney did raise that the $575 dental bill was for expenses prior to the divorce itself. There were no pleadings to file at that time. The issue was adequately raised.
¶ 19. We find that the chancellor abused his discretion in awarding this portion of the past-due medical expenses.

II. Unpaid alimony

¶20. At the time of their divorce, Mr. Russell was ordered to pay.Ms. Russell $250 per month in alimony for a period of five years. At the end of the five years, Ms. Russell was able to determine that all of the alimony had not been paid and in her May 1997 complaint, she asked for $150 in unpaid alimony. However, at the November 1997 hearing, Ms. Russell stated that the amount was in fact $75. Her attorney further informed the chancellor that he and Ms. Russell had miscalculated and that Mr. Russell owed only $75. Despite possessing this information, the chancellor awarded Ms. Russell the $150 she sought in her complaint.
f 21. Ms. Russell claims that this was a matter which Mr. Russell should have corrected under Rule 60 of the Mississippi Rules of Civil Procedure. She argues that since he failed to do so, the issue is now waived. Rule 60(a) motions to correct judgments are a procedural right but are not a prerequisite to an appeal. In fact, they permit corrections when normal appeal time has expired. There is nothing in the language of the rule or case law that would bar an issue that could be put into a Rule 60 motion from instead being made part of an appeal.
f 22. For whatever reason, the judgment was incorrectly entered awarding Ms. Russell $150 rather than $75. Contrary to Ms. Russell’s assertions, we may properly correct this on appeal.

III. Attorney’s fees

¶23. Finally, Mr. Russell challenges the award of $1,000 in attorney’s fees to Ms. Russell, claiming that she failed to establish her inability to pay her attorney. At the hearing, Ms. Russell presented a statement showing that she owed $2,500 in attorney’s fees. Counsel for Mr. Russell stipulated to the reasonableness of this amount, but did not stipulate to the appropriateness of awarding fees. Mr. Russell now argues the chancellor erred in awarding any attorney’s fees.
¶ 24. The question of attorney’s fees in a divorce action is a matter largely entrusted to the sound discretion of the trial court. Mizell v. Mizell, 708 So.2d 55, 65 (Miss.1998). The general rule is that if a *1066 party is financially able to pay attorney fees then she should do so, though this is a matter which is entrusted to chancellor’s sound discretion. Anderson v. Anderson, 692 So.2d 65, 74 (Miss.1997). Moreover, the prevailing party in a contempt action may also recover attorney’s fees. Varner v. Varner, 666 So.2d 493, 498 (Miss.1995). Under a limited exception, attorney’s fees may be recovered by a party who gains enforcement of a previous support order even when no contempt is ordered. See Johnson v. Pogue, 716 So.2d 1123, 1135 (Miss.App.1998).
¶ 25. As no contempt was found, in order for Ms. Russell to recover attorney’s fees she had to demonstrate her inability to pay. Ms. Russell testified that she works twenty-four hours a week, earning $7 per hour. Mr. Russell stated that his gross income is $3200 per month. However, Ms. Russell neither said that she was unable to pay nor was there a finding by the chancellor that she was unable to pay her attorney’s fees. We reverse and remand for further proceedings regarding this issue, which could consist of specific findings by the chancellor regarding ability to pay.
¶ 26. THE JUDGMENT OF THE JACKSON COUNTY CHANCERY COURT IS AFFIRMED IN PART, REVERSED AND RENDERED AS TO THE AWARD OF MEDICAL EXPENSES WHICH SHALL BE REDUCED BY $575, AND REVERSED AND REMANDED FOR FURTHER PROCEEDINGS REGARDING ATTORNEYS FEES. WE CORRECT THE JUDGMENT TO REFLECT THAT $75 IN UNPAID ALIMONY AND NOT $150 IS DUE. COSTS OF THIS APPEAL ARE TAXED ONE-HALF TO THE APPELLANT AND ONE-HALF TO THE APPEL-LEE.
BRIDGES, C.J., McMILLIN AND THOMAS, P.JJ., COLEMAN, DIAZ, HERRING, HINKEBEIN, KING, AND PAYNE, JJ., CONCUR.