MYERS, J.,
Dissenting:
¶ 17. The majority acknowledges that the appellants have a statutory right to appeal an order of contempt despite the fact that the merits of the litigation from which the contempt order generates have not been resolved. In addition, the majority acknowledges that the deficiencies preventing this statutory right from being invoked do not require mandatory dismissal. However, the majority holds that dismissal is nevertheless required because other matters must be addressed before a final resolution of the contempt issue may be reached.
¶ 18. The majority finds two matters that must be addressed by the lower court. First, the majority finds that ambiguities in the chancellor’s contempt decree require reconsideration of whether the chancellor intended this to be criminal contempt or civil contempt. If the chancellor intended this to be criminal contempt, then the court is the proper recipient of the sanction. Second, the majority finds that changing the payee of the sanction also requires reconsideration of the amount of the sanction.
¶ 19. I agree with the majority that the chancellor erred in awarding the Waldens the sanction. I also agree with the majority that the proper recipient of a sanction for criminal contempt is the court. However, I find it unnecessary for the lower court to reconsider these above stated matters before we can consider the contempt on the merits. Therefore, I respectfully dissent.

1. Ambiguities in the Contempt Decree

¶ 20. The majority acknowledges that most of the decree is “directed towards considerations of criminal contempt” but holds that the “conclusions of law” portion of the decree stating the legal standard for civil contempt creates an ambiguity as to *710 whether the chancellor intended to enter an order of criminal or civil contempt. As a result, the majority holds that this ambiguity must be reconsidered by the lower court as a prerequisite for review of the contempt on the merits. I respectfully disagree.
¶ 21. In their motion for contempt, the Waldens asked the court to hold the appellants in criminal contempt. Likewise, at the contempt hearing, the chancellor stated that criminal contempt was requested. I agree that the purpose of criminal contempt is to “vindicate the dignity and authority of the court.” Ill. Cent. R.R. Co. v. Winters, 815 So.2d 1168, 1179 (¶ 45) (Miss.2002) (quoting Premeaux v. Smith, 569 So.2d 681, 684 (Miss.1990)). I also agree that the “conclusions of law5’ portion of the contempt decree sets out some of the legal standards for civil contempt. However, I find this ambiguity insufficient to require dismissal.
¶ 22. As stated in Illinois Central Railroad Co., “[a] citation for criminal contempt is proper only when the contemnor has willfully, deliberately and contumaciously ignored the court.” Ill. Cent. R.R. Co., 815 So.2d at 1179 (¶45). The Wal-dens asked the court to impose criminal contempt both in the motion and at the hearing. Morris and Allen violated not only the temporary restraining order but also the preliminary injunction. In the “analysis” portion of the contempt decree, the chancellor noted that “[t]he testimony reveals that the [defendants have continued to engage in a pattern of intentional, willful behavior amounting to violations of the [cjourt’s [i]njunctive [ojrder.” In addition, the exact language of the chancellor’s order states that Morris and Allen are required to pay sanctions for “willfully, wantonly and contumaciously violating the [preliminary [injunction.” The very purpose of criminal contempt is to prohibit such obstinate behavior. The language in the motion for contempt, the contempt hearing and the decree show that this was the chancellor’s understanding as well. While the one portion of the chancellor’s decree that mentions civil contempt does lead to some confusion, I find that this does not create enough doubt to warrant dismissal of this appeal.

2. Reconsideration of the amount of the sanction

¶ 23. The majority also reasons that the fact the chancellor awarded criminal sanctions to a party lends support to the notion that the chancellor was operating under an incorrect legal standard. The majority holds that “[i]f the chancellor intended this to be criminal contempt,” the proper recipient of the sanction is the court. I agree. However, I do not agree with the majority that a change in payee mandates a reconsideration of the amount of the sanction.
¶ 24. The purpose of an order of criminal contempt would be to punish Morris and Allen not to compensate the Waldens. The fact that the chancellor mistakenly named the Waldens as payee does not prove that she was applying the incorrect legal standard. Therefore, I would affirm the judgment of criminal contempt of court but I would reverse and render to the extent that the sanctions for criminal contempt of court are to be paid to the Chancery Court of Holmes County.

3. Attorney Fees

¶ 25. Since I respectfully disagree with the majority with regards to dismissal of this appeal, I would review Morris and Allen’s claim that the award of attorney’s fees lacked specificity as to the amount. Uniform Chancery Court Rule 5.02 states: “Every Judgment shall be so drawn as to be definite and certain in all its terms and provisions.” The chancellor’s decree simply orders Morris and Allen to pay “reasonable attorney fees.” Such a decree is not “definite and certain.” The Waldens’ *711 counsel even brought up the fact that he had not offered proof of his fees during the hearing. Instead of receiving evidence of the fees, or even taking judicial notice of typical fees in that area, the chancellor simply awarded “reasonable fees.” In determining just what is “reasonable attorney fees,” the chancellor should consider the relative financial ability of the parties, the skill and standing of the attorney employed, the nature of the case and novelty and difficulty of the questions at issue, as well as the degree of responsibility involved in the management of the cause, the time and labor required, the usual and customary charge in the community, and the preclusion of other employment by the attorney due to the acceptance of the ease. McKee v. McKee, 418 So.2d 764, 767 (Miss.1982). The chancellor’s ruling should have considered these factors in awarding attorney’s fees. I would therefore affirm the judgment awarding attorney’s fees, but reverse and remand for a determination of the correct amount.
THOMAS AND CHANDLER, JJ., JOIN THIS SEPARATE WRITTEN OPINION.