## IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2013-CA-00969-COA

JOHN BARRY BOWEN                                                             APPELLANT

v.

PATRICIA LYNN (CURICO) BOWEN                                                  APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 05/02/2013 |
| TRIAL JUDGE: | HON. VICKI B. COBB |
| COURT FROM WHICH APPEALED: | DESOTO COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | JOE MORGAN WILSON |
| ATTORNEY FOR APPELLEE: | NANCY BALL LIDDELL |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| TRIAL COURT DISPOSITION: | AWARDED $7,350 IN ATTORNEY'S FEES TO APPELLEE |
| DISPOSITION: | AFFIRMED - 03/24/2015 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

### BEFORE IRVING, P.J., ROBERTS AND MAXWELL, JJ.

### ROBERTS, J., FOR THE COURT:

¶1.     Aggrieved by the DeSoto County Chancery Court's award of $7,350 in attorney's fees to his ex-wife Patricia Bowen, John Bowen appeals and asks this Court to determine if the chancery court erred in awarding Patricia attorney's fees or erred in calculating the total amount awarded.[1]  Finding no error, we affirm the chancery court's judgment.

### FACTS AND PROCEDURAL HISTORY

_____

     [1] Our standard practice is to refer to parties by their last names; however, due to the confusion it would create in this case, we will refer to them by their first names.

¶2.    This case has already been reviewed by this Court in *Bowen v Bowen*, 107 So. 3d 166 (Miss. Ct. App. 2012); therefore, we will only recite the facts necessary for the issues raised in this appeal.

¶3.    On November 16, 2005, the chancery court granted John and Patricia a divorce on the ground of irreconcilable differences. *Id.* at 168 (¶2). Then, in April 2009, the chancery court found John in contempt for his failure to pay child support and his portion of the children's medical-insurance premiums. *Id.* at 168-69 (¶4). The chancery court also modified his child-support obligation from $300 per month to $500 per month, and it awarded Patricia $10,000 in attorney's fees. *Id.* at 169 (¶4). John appealed these findings, and on appeal, this Court affirmed on all issues except for the issue of attorney's fees. *Id.* at 168 (¶1). In our opinion, we reversed and remanded the issue of attorney's fees for the chancery court to conduct a *McKee* analysis to determine the reasonableness of the award. *Id.* at 173 (¶27).[2]

¶4.    Pursuant to this Court's remand, the chancery court held a hearing to reconsider the award of attorney's fees to Patricia. After hearing testimony from Patricia and her attorney about the attorney's fees, the chancery court orally applied the *McKee* factors and awarded Patricia $7,350 in attorney's fees. The chancery court's order reflecting the same was filed on May 2, 2013. Aggrieved, John again appeals the chancery court's judgment, and argues that "[t]he sole issue before this [appellate c]ourt is whether or not attorney['s] fees should be granted . . . [to Patricia,] and if so[,] how much."

## ANALYSIS

---

[2] *McKee v. McKee*, 418 So. 2d 764, 767 (Miss. 1982)

¶5.    John's sole issue on appeal is that the chancery court erred in awarding Patricia $7,350 in attorney's fees.  On appeal, we employ the abuse-of-discretion standard when reviewing a trial court's grant or denial of attorney's fees.  *Proctor v. Proctor*, 143 So. 3d 615, 623 (¶34) (Miss. Ct. App. 2014) (citing *Miss. Power & Light Co. v. Cook*, 832 So. 2d 474, 478 (¶7) (Miss. 2002)).  In *McKee v. McKee*, 418 So. 2d 764, 767 (Miss. 1982), the Mississippi Supreme Court provided factors for consideration when determining the proper amount of attorney's fees to award:

> The fee depends on consideration of, in addition to the relative financial ability of the parties, the skill and standing of the attorney employed, the nature of the case and novelty and difficulty of the questions at issue, as well as the degree of responsibility involved in the management of the cause, the time and labor required, the usual and customary charge in the community, and the preclusion of other employment by the attorney due to the acceptance of the case.

¶6.    Following this Court's mandate, the chancery court held a hearing on the issue of attorney's fees.  Nancy Liddell, Patricia's attorney, submitted into evidence an itemized bill for her work related to the case.  She testified that in any instance where modification was mentioned in the bill, she halved the fee charged; thus, only the time spent working on the contempt action remained.  Liddell additionally submitted an affidavit from a local attorney confirming that the range of $150-$200 per hour was the usual and customary rate for DeSoto County.  John's attorney did not dispute that these were the customary rates for DeSoto County.  Patricia testified that she believed Liddell's rate was reasonable, and that she "probably worried [Liddell] to death" with her constant communication. Patricia further elaborated that without Liddell's aid, she would have been unable to get the owed child support from John.  Liddell also testified that she expended many hours on this case, as it was

3

more than just an average contempt action, and she had to turn away potential clients to handle this particular case.

¶7. In addressing the *McKee* factors in its oral ruling, the chancery court noted that the case was a novel case for a contempt action and had been ongoing since 2005. According to the chancery court, Patricia had to repeatedly file petitions for contempt because John would not obey court orders to pay child support. The chancery court explained that each time John failed to pay child support, Patricia "would have to talk to her attorney, have a petition filed, and after the petition [was] filed, after [John or his attorney were] served, then before [they] actually would have a trial, [John] would pay that child support. But he would not pay it directly to [Patricia]." When John did pay the child support, he would pay it to the chancery court, which required a signed order to release the check to Patricia, again requiring Liddell to prepare a motion for release of funds and an order to release the funds. The chancery court further stated that John, "by his repeated intentional misconduct[,] caused [Patricia] to incur attorney['s] fees that she did not have money to pay[, o]ver and over and over again[,]" and Liddell successfully obtained relief for Patricia each time John failed to pay. The chancery court also found that Liddell was a skilled lawyer with over twenty years of experience, who missed other employment opportunities due to the constant work and preparation of this case. According to the chancery court, while this amount of attorney's fees appeared high for an average contempt action, the $150-$200 per hour was a reasonable fee, and the bill would not have been as high if it were not for John's repeated misconduct.

¶8. Based upon the evidence presented, we find that the chancery court did not abuse its

4

discretion in awarding Patricia $7,350 in attorney's fees. As the supreme court noted in *Mabus v. Mabus*, 910 So. 2d 486, 489 (¶8) (Miss. 2005), in contempt actions, "[w]here a party's intentional misconduct causes the opposing party to expend time and money needlessly, then attorney['s] fee and expenses should be awarded to the wronged party." The chancery court found that the itemized expensed entered into evidence were reasonably incurred due to John's repeated misconduct.

¶9.    This issue is without merit.

¶10.    **THE JUDGMENT OF THE CHANCERY COURT OF DESOTO COUNTY IS AFFIRMED.  ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, CARLTON, MAXWELL, FAIR AND JAMES, JJ., CONCUR.**